IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| LEROY MITCHELL | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 07-5021 |
| CORRECTIONS OFFICER QUICK, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                               February 17, 2010

Plaintiff Leroy Mitchell claims his Fourth Amendment rights were violated when the Pennsylvania Department of Corrections subjected him to an investigative, non-random urinalysis without a reason to suspect he was using drugs. The urinalysis revealed Mitchell had opiates in his system. After a disciplinary hearing, Mitchell was found guilty of misconduct and sanctioned with 90 days of disciplinary custody. He now seeks to overturn the finding of misconduct[1] and enjoin the prison's practice of not recording its grounds for conducting investigative drug tests.

Because Defendants have adequately proven there were grounds to perform the investigative test, this Court will enter judgment in favor of Defendants.

**FINDINGS OF FACT**

1. In August 2007, inmate Leroy Mitchell and inmates whose last names are Adams and Rivera resided in D block of the Pennsylvania Department of Corrections (DOC) in Graterford, Pennsylvania.

2. Prior to August 22, 2007, Major Thomas Dohman received a tip from a confidential

---

[1] Although Mitchell did not request this relief in his Complaint, during the bench trial his attorney asked the Court to overturn the disciplinary charge.

1

informant indicating a shipment of drugs was recently delivered to cell block D. Major Dohman examined the records of cell block D inmates, and discovered Mitchell had tested positive for opiates in 2003. Major Dohman ordered an investigative urinalysis of several inmates of cell block D, including, but not limited to, Mitchell, Adams, and Rivera.

3. On August 22, 2007, at approximately 6:00 a.m., Mitchell, Adams, and Rivera were escorted to the prison Internal Security Department (Security) by Corrections Officers Ronald Quick and Jeffrey McCusker. Officer Shane Cuddeback also escorted at least one of the three prisoners.

4. Pursuant to Major Dohman's order, McCusker collected the three inmate's urine samples for investigative analysis. Because the testing was conducted as part of an investigation and was non-random, the Security Urine Log identified the three tests with the letter "I."

5. None of the corrections officers involved in the inmate escort or urine sampling knew why Major Dohman had requested the testing.

6. The inmates were not informed of the reason for the testing.

7. Mitchell's sample was sent to the San Diego Reference Laboratory, where it tested positive for opiates.

8. After reading the lab report, Cuddeback asked the Medical Department whether Mitchell was taking any medication that could cause a false positive test result. On August 25, 2007, a nurse certified that Mitchell was not taking any such medication. Cuddeback then prepared a misconduct charge against Mitchell.

9. At his disciplinary hearing, Mitchell pled not guilty. He was told he could have his urine retested, but he refused.

10. The hearing examiner found Mitchell guilty of misconduct and sanctioned him with 90 days of disciplinary custody.

11. Mitchell appealed, arguing the urinalysis was conducted in violation of his rights under the Fourth and Fourteenth Amendments. He lost the three rounds of administrative appeals available under the prison's disciplinary procedures.

**DISCUSSION**

A prisoner's constitutional rights are necessarily limited by the nature of the prisoner's confinement. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Fourth Amendment's prohibition against unreasonable searches and seizures remains in place in prisons, but the analysis of what is reasonable is affected by a prison's need to maintain order. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). To determine whether a search is reasonable, courts consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it was conducted." *Id.* Prisons have the authority to limit the constitutional rights of inmates when necessary to maintain security, and courts must generally defer to prison officials' judgment regarding what policies are necessary for security reasons. *Id.* at 545-47 (holding that prison administrators should be given "wide-ranging deference in [their] adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Therefore, regulations that curtail inmates' constitutional rights are valid if they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

Prison officials' use of investigative drug testing is reasonable under the Fourth Amendment "as long as there is any basis of justification." *Burgos v. Canino*, 641 F. Supp. 2d 443, 461 (E.D. Pa. 2009), *aff'd* No. 09-3443, 2009 WL 5031358 (3d Cir. Dec. 23, 2009); *see also Hadden v. Jacobs,*

No. 90-0759, 1990 WL 26677, at *1 (E.D. Pa. Mar. 12, 1990) ("Urine testing furthers a legitimate government interest of rehabilitating prisoners and enforcing the law; [so] it is not unreasonable intrusion of the plaintiff's privacy rights."). Courts have upheld random drug testing or testing "based on circumstances unique to a particular search, so long as these circumstances indicated the presence of legitimate suspicions that the inmate might have had an exposure to controlled substances." *Cann v. Hayman*, No. 07-2416, 2008 WL 2276006, at *7 (D.N.J. June 2, 2008) (citing *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994)). Courts have also considered whether one or more inmates were tested at the same time, because if multiple inmates are tested, "the danger of prison officials harassing particular prisoners is 'illusory.'" *Thompson v. Souza*, 111 F.3d 694, 702 (9th Cir. 1997) (quoting *Forbes*, 976 F.2d at 315).

In the instant matter, Major Dohman received information that there was a drug delivery made to the inmates of cell block D. While the nature and circumstances of the confidential tip were not revealed to Mitchell,[2] the Court has heard sufficient information to conclude Major Dohman received a credible tip about the existence of drugs in the cell block. Such a tip provides a reasonable basis for justification of the search. To maintain prison security, it was reasonable for Major Dohman to direct Mitchell and other inmates of cell block D to submit to a drug test. *See Lucero*, 17 F.3d at 1350 ("The unauthorized use of narcotics in a detention center by inmates . . . pose[s] a serious threat to prison officials' ability to maintain institutional security.").

Mitchell argues he is somehow harmed by the prison's policy of not recording the details of the confidential tip that gave rise to Major Dohman's investigation into the presence of drugs in cell

---

[2] This Court sealed Major Dohman's testimony due to prison officials' concerns it would reveal confidential information to Mitchell that would jeopardize prison security operations and put the informant at risk of harm.

block D. Although Major Dohman did not initially remember why he ordered Mitchell's testing, his review of the prison's internal records refreshed his memory about the nature of the investigation. His testimony is sufficient to establish there was a legitimate basis for the urinalysis. While it may be preferable for the prison to record information about the nature of an investigation to aid the Court in finding there was a basis for suspicion, the corrections officers testified they did not keep such records because any advantage to record-keeping is outweighed by the danger confidential information could be discovered by the inmates. This Court will not second-guess this policy, which, because it aids in concealing the identity of confidential informants, is reasonably related to maintaining order and security within the prison.

**CONCLUSIONS OF LAW**

1. Prisons officials had a legitimate basis to order an investigative urinalysis of Mitchell.

2. The investigative urinalysis of Mitchell did not violate his constitutional rights.

3. The prison's policy of not recording the justification for an investigative urinalysis did not violate Mitchell's constitutional rights.

4. Judgment shall be entered in favor of Defendants.

An appropriate order follows.

BY THE COURT:


\s\ Juan R. Sánchez
Juan R. Sánchez     J.